IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARK VICKREY, | |
| Plaintiff, | Case No.  CV 07-483-C-BLW |
| v. | **MEMORANDUM DECISION AND ORDER** |
| JOHN ERBST, REC. DIR.; KIM JONES, WARDEN; DR. GARRETT, DR. HILL, & NURSE PRAC. RORY YORK of the Medical Department ICIO, | |
| Defendants. | |

Before the Court are Plaintiff's Motion for Leave to Amend Complaint (Docket No. 73); Plaintiff's Motion Regarding Use of Phone Calls (Docket No. 76); Plaintiff's Motion Regarding Use of Arrest Papers (Docket No. 77); Motions to Dismiss or for Summary Judgment by Defendants Erbst and Jones (Docket No. 81), and Defendants Garrett and York (Docket No. 82); Plaintiff's Motions for Extension of Time (Docket Nos. 88 and 93); Plaintiff's Motion for Reconsideration regarding appointment of counsel (Docket No. 96); and Plaintiff's Motion for In Forma Pauperis Status (Docket No. 97).  The motions are ripe and at issue.  The Court finds that oral argument on the motions will not significantly aid the decisional process, therefore the Court will consider the motions without a

**Memorandum Decision & Order - 1**

hearing.

For the following reasons, the Court will deny the motions to amend complaint and regarding appointment of counsel (Docket Nos. 73 and 96), grant the motions for summary judgment (Docket Nos. 81 and 82), and deem moot the motions for extension of time, regarding use of phone calls and arrest papers, and for in forma pauperis status (Docket Nos. 88, 93, 76, 77 and 97, respectively).

## BACKGROUND

Plaintiff Mark Vickrey is an inmate of the Idaho Department of Corrections (IDOC), currently incarcerated at the Idaho Correctional Institution in Orofino, Idaho (ICI-O).  Plaintiff filed a Complaint (Docket No. 3) and Amended Complaints (Docket Nos. 6 and 11), alleging claims under 42 U.S.C. § 1983 for failure to protect and denial of proper medical help from ICI-O staff.  Specifically, Plaintiff alleges that Recreation Director John Erbst and Warden Kim Jones failed to adequately protect him in, or appropriately respond to, an incident on September 20, 2006.  In that incident, inmate Ferril Arnold jumped on and injured Plaintiff during a flag football game in the ICI-O recreation yard.  Plaintiff also alleges that ICI-O medical services staff Dr. Garrett and Nurse Practitioner Rory York denied Plaintiff proper medical treatment to address injuries and pain suffered by Plaintiff while at ICI-O.

Memorandum Decision & Order - 2

## ANALYSIS

### A.    Motion to Amend Complaint

The Court previously denied Plaintiff's request (Docket No. 49) to supplement his Amended Complaint.  In denying this request, the Court noted Plaintiff's undue delay, that Plaintiff had already amended his Complaint, and that Plaintiff knew or should have known of the facts forming the basis of the proposed amendments.  *Order* (Docket No. 60) at 2-3.  The Court also reasoned that allowing Plaintiff to amend after the discovery period has closed would unfairly prejudice Defendants.  *Id.* at 3.  The Court examines the same factors and applies the same analysis for Plaintiff's pending motion to amend.  *See Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004)(discussing the five factors the court must consider in a motion to amend complaint).  For the same reasons articulated in the Court's prior Order (Docket No. 60), Plaintiff's Motion to Amend (Docket No. 73), at issue here, will be denied.

### B.    Motion for Appointment of Counsel

Plaintiff has filed a fourth motion (Docket No. 96) for appointment of counsel.  Although Plaintiff framed this request as a motion to reconsider the Court's order denying counsel (Docket No. 37), Plaintiff seems to have intended the motion as a renewed request in light of the changed procedural circumstances.

**Memorandum Decision & Order - 3**

Plaintiff does not argue that the Court misapplied the law in its earlier orders denying counsel, but instead asks the Court to appoint counsel now that the case has progressed beyond the initial filing stage.  Plaintiff requests legal assistance given the complicated legal issues raised in Defendants' motion(s) to dismiss, and because of medical issues that Plaintiff argues impair his ability to represent himself.

Neither the procedural posture of this case, nor the medical challenges with which Plaintiff is dealing, change the findings and conclusions in the Court's prior order denying counsel.  As previously noted, the federal courts have no  authority to require attorneys to represent indigent litigants in civil cases under 28 U.S.C. § 1915(e).  *See Mallard v. U.S. Dist. Court for the Southern Dist. of Iowa*, 490 U.S. 396, 298 (1989).  The Court can only appoint an attorney if an attorney voluntarily accepts assignment of the case.  *Id.*  Also, the Court has no funds to pay for attorney fees in matters such as this one, adding to the difficulty in finding attorneys willing to accept assignment voluntarily.  Plaintiff should continue efforts to obtain assistance on his own.  Because the same findings and conclusions from the Court's previous order apply, Plaintiff's fourth request for appointment of counsel will be denied.

## C.    Legal Standards for Dismissal and Summary Judgment

**Memorandum Decision & Order - 4**

### 1.    Standard of law for 12(b)(6) motion

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain

statement of the claim showing that the pleader is entitled to relief," in order to

"give the defendant fair notice of what the . . . claim is and the grounds upon which

it rests," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964

(2007).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does

not need detailed factual allegations," it must set forth "more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not

do."  *Id*. at 555.

Only a complaint that states a plausible claim for relief survives a motion to

dismiss.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  "Determining whether a

complaint states a plausible claim for relief will . . . be a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense."

*Id.* at 1950.  A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged.  *Twombly*, 550 U.S. at 556.

### 2.    Standard of law on summary judgment

One of the principal purposes of summary judgment "is to isolate and

dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S.

**Memorandum Decision & Order - 5**

317, 323-24 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Anderson*, 477 U.S. at 256-57. The non-moving party must go beyond the pleadings and show that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324. The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Anderson*, 477 U.S. at 255. However, the Court need not adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

Rule 56(c) requires the Court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be

Memorandum Decision & Order - 6

evidence on which the jury could reasonably find for the [non-moving party]."

*Anderson*, 477 U.S. at 252.

**D.      Motion to Dismiss or for Summary Judgment by Erbst and Jones**

**1.      Eleventh amendment immunity**

Defendants Erbst and Jones argue that Plaintiff's claims should be dismissed because they are immune from liability under the Eleventh Amendment.  The United States Supreme Court has determined that the Eleventh Amendment generally prohibits litigants from bring suits against states, state agencies, and state officials acting in their official capacity.  *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993).  When a plaintiff is seeking damages against a state official, the Court construes the complaint as an individual capacity suit because an official capacity suit for damages would be barred.  *See Cerrato v. San Francisco Community College Dist.*, 26 F.3d 968, 973 n.16 (9th Cir. 1994).  Accordingly, in this case, Plaintiff's claims shall be construed as personal capacity claims against each of the named Defendants.  Dismissal is not required under the Eleventh Amendment.

**2.      Qualified immunity**

Plaintiff alleges that Defendants Erbst and Jones – the recreation director and warden of the ICI-O, respectively – failed to adequately protect Plaintiff from

**Memorandum Decision & Order - 7**

inmate Ferill Arnold.  Erbst and Jones assert they are entitled to qualified immunity.

The doctrine of qualified immunity protects state actors from personal liability for money damages sought for their on-the-job conduct so long as the conduct is objectively reasonable and does not violate an inmate's clearly-established federal rights.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted).  Conversely, a state actor may be held personally liable in a § 1983 action if he knew or should have known that he was violating a plaintiff's clearly-established federal rights.  *Id*.  True to its dual purposes of protecting state actors who act in good faith and redressing clear wrongs caused by state actors, the qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

A qualified immunity analysis asks: (1) whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [defendant's] conduct violated a constitutional right"; and (2) whether that right was clearly established.  *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001)(citation omitted).[1]  Qualified immunity operates to ensure that a

---

[1]Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the

**Memorandum Decision & Order - 8**

government official is on notice that his conduct is unlawful, before he is subjected to suit. *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009), *citing Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508 (2002).

In this case, the first question is whether Defendants failed to protect Plaintiff in violation of the Eighth Amendment right to be free from cruel and unusual punishment. "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970 (1994)(citations omitted). However, prison officials who are responsible for inmate safety are not constitutionally liable for every injury inflicted on a prisoner by another prisoner. *Id.* at 834.

To prevail on an Eighth Amendment "prison conditions" claim based on failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* When a prison official is deliberately indifferent to a substantial risk of serious harm, his conduct violates the Eighth Amendment. *Id.* at 828, 834. "Deliberate indifference" requires a showing that the official was "subjectively aware of the risk" – more than mere negligence or "ordinary lack of due care for the prisoner's interests or safety." *Id.* at 829, 834-35 (other citations omitted).

---

particular case at hand." *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).

**Memorandum Decision & Order - 9**

The Ninth Circuit considered a failure-to-protect claim brought by the family of an inmate (Ford) who was killed by his cellmate (Diesso) in *Ford v. Ramirez-Palmer*, 301 F.3d 1043 (9th Cir. 2002).  The court in *Ford* found that prison officials violated the Eighth Amendment where they knew of "Diesso's extensive history of violent behavior towards inmates and staff," and that Diesso "was a threat to Ford but housed Ford with him anyway." *Id.* at 1048, 1050.

In *Hearns v. Terhune*, 413 F.3d 1036 (9th Cir. 2005), the plaintiff alleged that prison officials had failed to protect him from being attacked by fellow Muslim inmates.  In that case, the court held that plaintiff's amended complaint stated sufficient facts to support his claim that defendants knew or should have known that the inmates who attacked plaintiff posed a substantial risk of harm to the plaintiff. *Id.* at 1040-41.  The court in *Hearns* noted that the alleged facts raised an inference "that the prison officials *created* the risk and then *facilitated* the attacks" on plaintiff. *Id.* at 1041.

In a case out of the Eighth Circuit, a plaintiff alleged that prison officials failed to protect him from attack by another inmate. *Berry v. Sherman*, 365 F.3d 631 (8th Cir. 2004).  There, the court held that the undisputed evidence showed that neither Berry, nor prison officials knew or had notice that Berry was at 'substantial risk of serious harm' from attack by the other inmate. *Id.* at 634.  The

court therefore reversed the district court's denial of qualified immunity to the

appellant correctional officers.  *Id.* at 635.

Here, Plaintiff acknowledges that inmate Arnold attacked Plaintiff "without

provocation or reason."  *Amended Complaint* (Docket No. 11) at 3.  Plaintiff labels

inmate Arnold a "violent" inmate.  However, Plaintiff has presented no evidence to

support that Defendants knew or should have known that Arnold would attack

Plaintiff during a flag football game in the recreation yard.  Unlike in *Hearns* or

*Ford*, the facts here do not support that Arnold posed a substantial risk of serious

harm to Plaintiff.

If there is a genuine dispute as to the "facts and circumstances within an

officer's knowledge," or "what the officer and claimant did or failed to do,"

summary judgment is inappropriate.  *Act Up!/Portland v. Bagley*, 988 F.2d 868,

873 (9th Cir. 1993).  When a § 1983 defendant makes a properly supported motion

for summary judgment based on immunity, the plaintiff has the obligation to

produce evidence of his own; the district court cannot simply assume the truth of

the challenged factual allegations in the complaint.  *Butler v. San Diego District

Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004).  The Court here finds that, as

in *Berry*, even where the facts are viewed in a light most favorable to Plaintiff,

Plaintiff has not demonstrated that Erbst's or Jones' conduct violated Plaintiff's

**Memorandum Decision & Order - 11**

Eighth Amendment rights.

Absent showing of a constitutional violation, the Court need not consider the second prong of the qualified immunity analysis, regarding a clearly established right. The Court here finds that Defendants Erbst and Jones are entitled to qualified immunity. All claims by Plaintiff against Defendants Erbst and Jones are therefore dismissed.

**E.    Motion to Dismiss or for Summary Judgment by Garrett and York**

**1.    Exhaustion of claims**

Defendants Garrett and York argue that Plaintiff's claim regarding treatment of his gallbladder disease should be dismissed for failure to exhaust. "Proper" exhaustion of administrative remedies is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The *Bock* Court noted that the important policy concern behind requiring exhaustion is that it "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id*. at 204.

**Memorandum Decision & Order - 12**

Where there is an "informal[]" and "relative[ly] simpl[e]" prison grievance system, prisoners must take advantage of it before filing a civil rights complaint. *Woodford v. Ngo*, 548 U.S. at 103.  In *Woodford v. Ngo*, the prisoner had filed his grievance within six months of the incident at issue, rather than within fifteen days as required by the California Prison grievance system.  *Id*. at 86-87.  The Supreme Court rejected the Ninth Circuit's determination that the prisoner "had exhausted administrative remedies simply because no such remedies remained available to him."  *Id*. at 87.

Failure to exhaust remedies is an affirmative defense that should be brought as an unenumerated Rule 12(b) motion.  *Wyatt v. Terhune*, 315 F.3d 1108, 119 (9th Cir. 2002).  Therefore, the Court will consider Defendants' Motion as a motion to dismiss, rather than a motion for summary judgment.  In deciding a motion to dismiss for failure to exhaust administrative remedies, a court may look beyond the pleadings and decide disputed issues of fact.  *Id.* at 1119-20.  Defendants bear the burden of proving failure to exhaust.  *Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005).

The IDOC has a grievance process that requires prisoner's to file a Grievance Form with the Health Services Administrator.  *Mechling Affiddavit* (Docket No. 82-5) at 3.  The ICI-O Grievance Coordinator, Loy Mechling,

**Memorandum Decision & Order - 13**

reviewed all grievances submitted by Plaintiff Mark Vickrey from January 2005 to September 2009.  *Id.* at 5.  According to Ms. Mechling in her sworn affidavit, Plaintiff did not "file any medical grievances related to his gallbladder or any diagnosis of his gallbladder."  *Id.*  Plaintiff has failed to show that he exhausted administrative remedies regarding his claim of failure to properly treat him for gallbladder disease, nor has he shown that any exceptions to exhaustion apply. Therefore, this claim against Defendants York and Garrett will be dismissed.

### 2.     Claims for improper medical care

Plaintiff claims that, in general, Defendants Garrett and York failed to provide adequate medical care to Plaintiff in violation of the Eighth Amendment. To prevail on an Eighth Amendment claim regarding prison medical care, Plaintiff must show that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)).  The Supreme Court has opined that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  *Id.*

The Ninth Circuit has defined a "serious medical need" in the following ways:

**Memorandum Decision & Order - 14**

> . . . failure to treat a prisoner's condition [that] could result in further
> significant injury or the unnecessary and wanton infliction of pain; . . .
> [t]he existence of an injury that a reasonable doctor or patient would
> find important and worthy of comment or treatment; the presence of a
> medical condition that significantly affects an individual's daily
> activities; or the existence of chronic and substantial pain.

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other*

*grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

In a medical context, deliberate indifference exists when an official both

knows of, and acts in disregard of, a serious medical condition.  The Supreme

Court has made clear that the inquiry into deliberate indifference under the Eighth

Amendment requires a "subjective" component.  *Farmer v. Brennan,* 511 U.S. 825,

839 (1994).  The defendant must be "aware of facts from which the inference could

be drawn that a substantial risk of serious harm exists, and he must also draw the

inference."  *Id.* at 838.  Differences in judgment between an inmate and prison

medical personnel regarding appropriate medical diagnosis and treatment are not

enough to establish a deliberate indifference claim.  *See Sanchez v. Vild*, 891 F.2d

240, 242 (9th Cir. 1989).  Mere indifference, medical malpractice, or negligence

also will not support a cause of action under the Eighth Amendment.  *Broughton v.*

*Cutter Lab*, 622 F.2d 458, 460 (9th Cir. 1980).  Also, a mere delay in treatment

does not constitute a violation of the Eighth Amendment, unless the delay causes

**Memorandum Decision & Order - 15**

serious harm.  *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990).

In this case, Plaintiff asserts that he has suffered extreme back and side pain and severe lack of motion following an incident on September 20, 2006.  In that incident, Plaintiff alleges that inmate Arnold jumped on Plaintiff's back, knocking him unconscious, during a flag football game in the recreation yard.  According to Plaintiff, Defendant Nurse Practitioner York mocked Plaintiff's attempts to get help for pain, and made inappropriate and degrading remarks.  Plaintiff claims that Dr. Smith, at Clearwater County Hospital, told Plaintiff in July of 2007 that he had a diseased gall bladder, but the medical staff at ICI-O would not treat him for it.

According to Plaintiff, Dr. Garrett took over for Dr. Hill at the ICI-O, sometime after May 2007.  Plaintiff asserts that Dr. Garrett has refused to provide him proper medical care.  *See Amended Complaint* (Docket No. 11).  Specifically, Plaintiff alleges that Dr. Garrett told Plaintiff, "We will not provide you any more care," and regarding continued rectal bleeding and back pain, Dr. Garrett said, "I'm sorry, we don't treat that."  According to Plaintiff, the lack of medical care caused Plaintiff to have a mental breakdown, with on-going psychological injuries.  *Id.*

Dr. Petersen, a physician and current Medical Director of ICI-O, reviewed Plaintiff's medical records since January 2005.  Dr. Petersen indicates in an affidavit to the Court, that medical care provided by Dr. Garrett and Nurse

**Memorandum Decision & Order - 16**

Practitioner York, for Plaintiff, has been medically appropriate, responsive, and consistent with the applicable medical standard of care. *Affidavit of Dr. Petersen* (Docket No. 82-10) at 12-13. According to Dr. Petersen, Plaintiff did not seek medical treatment for alleged injuries from the September 20, 2006 incident until January 16, 2007. *Affidavit of Dr. Petersen* (Docket No. 82-10) at 8. Plaintiff did not report the recreation yard incident until March 2007. *Id.* Dr. Petersen further notes that Plaintiff was treated by York or Garrett at least 19 times from the incident on September 20, 2006 to January 1, 2009. *Id.* at 5-12. Plaintiff was, at times, uncooperative with treatment by York and Garrett. *Id.* (E.g. Plaintiff refused care, walked out of visit during attempted-examination, declined pain medication, refused to perform range of motion exam). In Dr. Petersen's medical opinion, Plaintiff's back pains are due to degeneration of his spine, not caused by any injury, nor any acts or omissions by medical staff. *Id.* at 13.

While Plaintiff may disagree with treatment decisions by Garrett and York, the evidence does not support that Garrett and York were deliberately indifferent to Plaintiff's medical needs. The record fails to support any subjective awareness by Garrett or York, that any act or omission by them posed a risk of harm to Plaintiff. Nor do the facts support that Garrett or York took any action or inaction resulting in harm to Plaintiff. Because the facts, even when viewed in a light most favorable

**Memorandum Decision & Order - 17**

to Plaintiff, do not support deliberate indifference by Garrett and York, the Court finds there is no genuine issue of material fact regarding Plaintiff's claims of improper medical care.  Accordingly, the Court will grant summary judgment for Garrett and York on those claims.

**F.     Dismissal for Failure to Serve**

Plaintiff has failed to serve a summons and copy of his Complaint or Amended Complaint on Defendant Hill.  Accordingly, under Rule 4(m), all claims as to Defendant Hill are dismissed for failure to serve within 120 days after the Complaint or Amended Complaint were filed.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiff's Motion for Leave to Amend Complaint (Docket No. 73) is DENIED;

IT IS FURTHER ORDERED that Plaintiff's Motion for Reconsideration regarding appointment of counsel (Docket No. 96) is also hereby DENIED;

IT IS FURTHER ORDERED that Motions to Dismiss or for Summary Judgment by Defendants Erbst and Jones (Docket No. 81), and Defendants Garrett and York (Docket No. 82) are hereby GRANTED;

IT IS FURTHER ORDERED that Plaintiff's Motion Regarding Use of

**Memorandum Decision & Order - 18**

Phone Calls (Docket No. 76), Plaintiff's Motion Regarding Use of Arrest Papers (Docket No. 77), Plaintiff's Motions for Extension of Time (Docket Nos. 88 and 93), and Plaintiff's Motion for In Forma Pauperis Status (Docket No. 97) are hereby deemed MOOT.

      IT IS FURTHER ORDERED that all claims against Defendant Dr. Hill are hereby DISMISSED for failure to serve.

      IT IS FURTHER ORDERED that this matter is hereby DISMISSED with prejudice in its entirety.



DATED:  **May 24, 2010**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision & Order - 19**