UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARK VICKREY,<br><br>              Plaintiff,<br><br>   v.<br><br>JOHN ERBST, Rec. Dir.; KIM JONES, Warden; DR. GARRETT; DR. HILL; and NURSE PRAC. RORY YORK, of the Medical Department of ICIO,<br><br>              Defendants. | Case No. 3:07-CV-00483-BLW<br><br>**ORDER** |

Pending before the Court are two post-judgment motions filed by the parties. Having reviewed the motions, responses, and the record in this case, the Court has determined that the motions are suitable for disposition without oral argument. Accordingly, the Court enters the following Order.

**PLAINTIFF'S MOTION FOR RECONSIDERATION
OF DISMISSAL WITH PREJUDICE**

**1.**    **Background**

Plaintiff, an inmate, alleges that between September and October 2006, while he was playing flag football in the recreation yard of the Idaho Correctional Institution in Orofino, Idaho (ICI-O), another inmate, Ferrill Arnold, intentionally jumped on Plaintiff's neck and back, knocking him unconscious and injuring the side of his back and his spine.

ORDER - 1

Plaintiff brought suit against Warden Kim Jones and Recreation Director John Erbst, alleging that they failed to protect him from a serious risk of harm and failed to take proper action after his injury. Plaintiff also sued Dr. Steven Garrett and Nurse Practitioner Rory York, alleging that they failed to provide him with proper medical care after the incident. (Second Amended Complaint, Dkt. 11.) Defendants filed Motions for Summary Judgment (Dkt. 81 & 82), which the Court granted. (Dkt. 109.) After judgment was entered, Plaintiff requested that the Court reconsider the rulings in that Memorandum Decision and Order, dated May 24, 2010. Plaintiff filed his Motion for Reconsideration within ten days of entry of the Order, on June 8, 2010 (mail box rule).

2.  **Standard of Law**

In *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000), the Ninth Circuit Court of Appeals clarified the limited use of a Rule 59(e) motion:

> Although Rule 59(e) permits a district court to reconsider and amend a previous order, the rule offers an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." 12 James Wm. Moore et al., Moore's Federal Practice § 59.30[4] (3d ed. 2000). Indeed, "a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation. *See id.*

3. **Discussion**

Because Plaintiff is an inmate who has no legal training and limited access to resources, the Court will consider his newly-submitted evidence without probing whether Plaintiff could have submitted it earlier in the case. For this same reason, Defendants' Motion to Strike will be denied, and the Court will simply note that the Affidavit of Dr. Ralph Heckard has limited applicability here.

A. *Defendants Erbst and Jones*

Plaintiff first argues that the new Affidavit of Inmate Jeffrey Schoengarth supports Plaintiff's contention that the attack by Inmate Ferrill Arnold was intentional and malicious. Schoengarth also states in the Affidavit that Defendants and other staff were slow to respond to Plaintiff's injury in the recreational yard, and were standing around cracking jokes with one another while Plaintiff was lying down on the field.

Schoengarth states that later Sergeant Lahai threatened that if Schoengarth knew anything about an assault and didn't tell staff, then Schoengarth would be in trouble for the assault and would be transferred or punished. As a result, Schoengarth "made up a story about an assault." Schoengarth also states that "Mr. Vickrey has been victimized by the IDOC for years over this incident." (Affidavit of Jeffrey Schoengarth, p. 4, Dkt. 111-1.)

Schoengarth's Affidavit does not change the outcome of this case. It does not provide evidence that Defendants Erbst and Jones knew or should have known that the

inmate would attack Plaintiff. While the Affidavit tends to show that Defendants were slow to react to Plaintiff's injuries, the Affidavit states that they did, in fact, call medical personnel, and there is no evidence that the slow reaction time caused additional harm.

Plaintiff further alleges that he has new evidence that when he was held in protective custody from the Aryan Knights, he notified Sergeant Amy Anderson in writing in an Offender Concern Form that Inmate Arnold had been harassing him prior to the incident. However, Plaintiff provides no link between his notification to Anderson, who is not a Defendant, and any of the Defendants. There is still no evidence that *Defendants* were aware of a serious risk of harm if Arnold was permitted to play football with Plaintiff. It is unclear why Plaintiff engaged in a game of football with Arnold if Plaintiff believed Arnold was a threat to Plaintiff's safety. If Plaintiff did not consider Arnold enough of a threat to bow out of a football game with Arnold, it is difficult for him to argue that Defendants should have intervened. Further, it is too late to add a claim of failure to protect against Amy Anderson, and there is no evidence that such a claim was exhausted in the prison grievance system.

The same reasoning holds true for the submission of the parole consideration records of Ferrell Arnold, the inmate who attacked Plaintiff. The parole record shows that Arnold had many disciplinary offense reports, but only one of the reports between 2005 and 2006 was for a violent act, when he walked up behind a staff member and struck him in the elbow. (Dkt. 111-5.) There is not enough in the record to show that *these particular Defendants* knew or should have known that Arnold posed a known threat to Plaintiff on

**ORDER - 4**

the recreation yard as a result of Arnold's parole request records.

Deliberate indifferent is a very high standard to meet. Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan,* 511 U.S. 825, 838 (1994). In other words, "deliberate indifference" requires a showing that the official was "*subjectively* aware of the risk." *Id*. at 829 (emphasis added). In *Berry v. Sherman*, 365 F.3d 631 (8th Cir. 2004), the plaintiff alleged that prison officials had failed to protect him from the attack of another inmate. There, the court held that "the undisputed evidence indicates that no one, including Berry, believed he was at 'substantial risk of serious harm.'" *Id*. at 634. There is not enough in the record to show that Defendants knew there was a substantial risk that Arnold would seriously injure Plaintiff but consciously disregarded the risk before the incident occurred.

      **B.**     *Defendants N.P. York and Dr. Garrett*

Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Lab*, 622 F.2d 458, 460 (9th Cir. 1980). If the defendants are able to show that medical personnel have been "consistently responsive to [the inmate's] medical needs, and there has been no showing that the

medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," a plaintiff's claims may be dismissed by summary judgment prior to trial. *Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004).

The Eighth Amendment does not provide a right to a specific treatment. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("[The plaintiff] is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her."). A prison doctor's recommendation for a less costly treatment is not deliberate indifference unless the recommendation "was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998).

In *Estelle v. Gamble,* 429 U.S. 97 (1976)*,* Inmate Gamble suffered a back injury at work when a 600-pound bale of hay fell on him. Doctors and other medical providers at the prison prescribed rest and a variety of medications, including different pain relievers and muscle relaxers. Gamble argued that the medical providers were deliberately indifferent because they should have done more to diagnosis his back problem, such as x-raying his back. The Court disagreed, reasoning:

> Gamble was seen by medical personnel on 17 occasions spanning a 3-month period: by Dr. Astone five times; by Dr. Gray twice; by Dr. Heaton three times; by an unidentified doctor and inmate nurse on the day of the injury; and by medical assistant Blunt six times. . . . The doctors diagnosed his injury as a lower back strain and treated it with bed rest, muscle

> relaxants and pain relievers. Respondent contends that more should have been done by way of diagnosis and treatment, and suggests a number of options that were not pursued. The Court of Appeals agreed, stating: "Certainly an x-ray of (Gamble's) lower back might have been in order and other tests conducted that would have led to appropriate diagnosis and treatment for the daily pain and suffering he was experiencing." 516 F.2d, at 941. But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act. The Court of Appeals was in error in holding that the alleged insufficiency of the medical treatment required reversal and remand. That portion of the judgment of the District Court should have been affirmed.

429 U.S. at 97-98.

The Court previously determined that Defendants Garrett and York were entitled to summary judgment on Plaintiff's claim that they rendered constitutionally-inadequate medical care. In support of Defendants' Motion, Dr. Petersen opined that Plaintiff's continuing problems are rheumatologic and are not the result of an injury or the result of the football field incident. (Affidavit of Dr. Petersen, ¶¶ 44 & 55, Dkt. 82-10.)

Plaintiff now argues that his medical records and x-rays show that Dr. Peterson's opinion is unsupported by the record. Not so. While it is true that in 2002 (four years prior to the incident and injury that are the subject of this action), an x-ray did not show any fusion, banding, or thoracic issues, the record also shows that Plaintiff had an adult-onset spinal condition that caused the fusion and thoracic issues that appeared in or after 2006. No medical evidence exists in the record that the type of medical care chosen by Defendants *caused* Plaintiff's symptoms or caused them to become worse.

**ORDER - 7**

Rather, it appears that Plaintiff's problems are symptoms of a spinal disorder that has no known cause, other than a genetic propensity. Particularly, on December 30, 2008, Dr. Petersen reviewed the x-rays and confirmed his suspected diagnosis of ankylosing spondylitis with a blood test that indicated Plaintiff is HLA-B27 positive.[1] (Affidavit of Plaintiff, ¶¶ 24 & 25, Dkt. 116-1.) That Dr. Petersen was able to definitively diagnose this condition in 2008 (confirmed in 2009 by Dr. Nicola) does not show that Dr. Garrett's prior treatment was rendered in a manner that disregarded a substantial risk of serious injury. Medical records show that Dr. Garrett ordered and Plaintiff refused blood testing on August 30, 2007, an earlier time when Plaintiff's HLA-B27 positive symptom could have been found.

In any event, there is not enough in the record to show that York or Garrett treated Plaintiff's back injury in manner that equates with deliberate indifference–meaning that the diagnosis and course of treatment were chosen with a state of mind akin to criminal recklessness, or, in other words, with a conscious disregard of a substantial risk of serious harm. *Farmer*, 511 U.S. at 837-38. Even though Plaintiff alleges that York and Garrett

---

[1] The Mayo Clinic provides the following general information:
Ankylosing spondylitis has no known specific cause, though genetic factors seem to be involved. In particular, people who have a gene called HLA-B27 are at significantly increased risk of developing ankylosing spondylitis. As ankylosing spondylitis worsens and the inflammation persists, new bone forms as part of the body's attempt to heal. This new bone gradually bridges the gap between vertebrae and eventually fuses sections of vertebrae together. Those parts of your spine become stiff and inflexible. Fusion can also stiffen your rib cage, restricting your lung capacity and function. Signs and symptoms of ankylosing spondylitis typically begin in early adulthood. Inflammation also can occur in other parts of your body — such as your eyes and bowels. See www.mayoclinic.com.health/ankylosing-spondylitits/DS00483.

**ORDER - 8**

sometimes made degrading remarks about Plaintiff during his appointments (which is unprofessional but not a constitutional violation), the medical records do not bear out his allegation that the type of treatment rendered was substandard or that it resulted from a mental state of deliberate indifference. Rather, Defendants York and Garrett treated Plaintiff at least 19 times between September 20, 2006, and January 1, 2009. They began with conservative treatment, including physical therapy and pain medication, and did more tests as time progressed and Plaintiff's symptoms worsened. Plaintiff had a colonoscopy, ultrasound, various x-rays and a CT-scan. His facts are much like those in *Estelle v. Gamble*, above, where no deliberate indifference was found.

Plaintiff argues that he was not provided with any effective help until Dr. Heckard attended to him in December 2009, and that he was given no pain medication for three years prior to that date. (Dkt. 116-1, ¶ 35.) However, beyond the testing set forth above, the record shows that Plaintiff was provided with a variety of medication. Plaintiff reported that he stopped taking all of his medications on October 30, 2006, without conferring with his medical providers. On November 13, 2006, Plaintiff reported taking a lot of Indomethacin.[2] He was prescribed Tylenol every 4-6 hours on November 14, 2006. Plaintiff was ordered a cane on November 24, 2006. On January 18, 2007, medical records show that Plaintiff stated he did not want any pain medication. On March 2, 2007,

---

[2] Indomethacin is a non-steroidal anti-inflammatory similar to ibuprofen and naproxen used to reduce swelling and treat pain. It is used to treat rheumatoid arthritis and ankylosing spondylitits, among other ailments. See www.medicinenet.com/indomethacin.

**ORDER - 9**

Plaintiff stated he did not want any pills, but then decided to take Mobic.[3] On May 16, 2007, Plaintiff complained of pain, and pain medication was offered; he accepted Tylenol. Plaintiff also was provided with Vicodin.[4] (See Affidavit of Dr. Petersen, Dkt 82-10.)

The Court disagrees with Plaintiff that Dr. Ralph Heckard's general opinion rendered by Affidavit in the *Balla* class action lawsuit shows that Dr. Garrett and N.P. York were deliberately indifferent here. In *Balla*, Dr. Heckard opined that when he began working at ISCI on June 29, 2009, the overall health care system was difficult to navigate and caused delay in the care and treatment of many inmates. This opinion does not address the specific care Plaintiff received from Defendants Garrett and York from 8/16/06 to 2/19/09. (See Affidavit of Dr. Ralph Heckard, Dkt. 116-2.)

Plaintiff next questions whether the Court received his "Response (400 pages), First Supplement and Final Supplemental" filings of March 4, 2010. There are no filings from Plaintiff that were received in March 2010. However, on January 7, 2010, Plaintiff's "Completed Supplemental Responses" with 400 pages of exhibits were filed. (Dkt. 101.) On January 29, 2010, Plaintiff's Reply Re: Appointment of Counsel was filed (Dkt. 105), and on May 6, 2010, a copy of Plaintiff's Notice of Tort Claim was filed. (Dkt. 108.)

The Court has reviewed each of the items Plaintiff has filed, including the 400

---

[3] Mobic is a non-steroidal anti-inflammatory used to treat pain or inflammation caused by arthritis. See www.drugs.com/mobic.

[4] Vicodin is a combination of acetaminophen and hydrocodone (a narcotic pain reliever). See www.drugs.com/vicodin.

pages of exhibits, and none changes the outcome of the case, as noted above. While there is no doubt that Plaintiff has a permanent medical condition, there is insufficient evidence in the record linking a deliberately indifferent act of Defendants to the resultant condition.

The Court does not agree that Plaintiff is entitled to copies of the x-rays instead of x-ray reports, because nothing suggests that decisions regarding diagnosis or causation would be altered by viewing the actual x-rays. Nor does the Court agree that Plaintiff's simple "if-then" reasoning (without a sufficient causal connection) overcomes summary judgment: "this injury did not exist prior to 10/11/2006 and now the plaintiff needs a wheel-chair part-time and with no medical or surgical procedural available to improve pain and lack of mobility." (Dkt. 111, p. 4.)

Plaintiff argues that, in *Balla*, the Court found that Plaintiffs presented a "prima facie" case of denial of adequate medical care. However, the battle as to whether *system-wide changes* need to be implemented in the ISCI medical department will be waged in *Balla*, and will have to be supported by particular evidence, just as Plaintiff has been required to provide here. Such a statement by the Court does not mean that every inmate who has alleged inadequate medical care during various time periods is entitled to a jury trial. Rather, Plaintiff had an opportunity to present adequate supporting evidence to show that he should proceed to jury trial on his claims from 8/16/06 to 2/19/09, and he failed to do so. Neither has his "new evidence" overcome the deficiencies in proving the elements of his case.

The Court again concludes that Plaintiff has not shown that he has enough

evidence to proceed to trial on any of his claims. One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. If Plaintiff has issues with current medical care, he may bring those issues to the attention of the attorneys in the *Balla* case. However, this closed case is not the proper forum for new claims.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Motion to Reconsider (Dkt. 111) is DENIED.

2. Defendants' Motion to Strike (Dkt. 117) is DENIED.

DATED: **March 10, 2011**

Honorable B. Lynn Winmill
Chief U. S. District Judge